UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

BRIAN JONES,

                   Plaintiff,

          v.

MAGNACHIP SEMICONDUCTOR
CORPORATION, YOONG-JOON KIM,
KYO-HWA CHUNG, MELVIN L.
KEATING, ILBOK LEE, CAMILLO
MARTINO, GARY TANNER, and NADER
TAVAKOLI,

                   Defendants.

-----------------------------------------------------------------

Case No.

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Brian Jones ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE AND SUMMARY OF THE ACTION

1.     Plaintiff brings this action against Magnachip Semiconductor Corporation ("Magnachip" or the "Company") and the members of Magnachip's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell Magnachip to Wise Road Capital LTD ("Wise Road") through South Dearborn Limited and Michigan Merger Sub, Inc. (the "Proposed Transaction").

2.      On March 26, 2021, Magnachip announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, each Magnachip shareholder will receive $29.00 in cash for each Magnachip share that they own.

3.      On May 7, 2021, Magnachip filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC.  The Proxy is materially deficient and misleading because, inter alia, it fails to disclose material information regarding: (i) the Company's financial projections and the financial analyses performed by the Board's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"); and (ii) potential conflicts of interest faced by J.P. Morgan and Company insiders. Without additional information, the Proxy is materially misleading in violation of the federal securities laws.

4.      The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Magnachip's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Magnachip.

9.      Defendant Magnachip is a Delaware corporation, with its principal executive offices located at c/o MagnaChip Semiconductor S.A., 1, Allée Scheffer, L-2520, Luxembourg, Grand Duchy of Luxembourg.  Magnachip's shares trade on the New York Stock Exchange under the ticker symbol "MX."

10.     Defendant Young-Joon Kim has served as Chief Executive Officer and a director of the Company since May 2015.

11.     Defendant Kyo-Hwa Chung has served as a director of the Company since July 2020.

12.     Defendant Melvin L. Keating has served as a director of the Company since August 2016.

13.     Defendant Ilbok Lee has served as a director of the Company since August 2011.

14.     Defendant Camillo Martino has served as Non-Executive Chairman of the Board since June 2020 and a director of the Company since August 2016.

15.     Defendant Gary Tanner has served as a director of the Company since August 2015.

16.     Defendant Nader Tavakoli has served as a director of the Company since November 2009.

17.     Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

18.     Relevant non-party Wise Road is a global private equity firm that invests in leading technology companies.  It focuses on identifying opportunities in enabling technologies for global urbanization and smart & green life through close cooperation with companies across several main themes, including smart city, intelligent manufacturing and renewable energies.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

19.     Magnachip is a designer and manufacturer of analog and mixed-signal semiconductor platform solutions for communications, Internet of Things, consumer, industrial and automotive applications.  The Company provides a broad range of standard products to customers worldwide.  With more than 40 years of operating history, Magnachip owns a portfolio of approximately 1,200 registered patents and pending applications, and has extensive engineering, design and manufacturing process expertise.

20.     The Company's standard products business includes its Display Solutions and Power Solutions business lines.  Magnachip's Display Solutions products provide panel display solutions to major suppliers of large and small rigid and flexible panel displays, and mobile, automotive applications and home appliances.  Its Power Solutions products include discrete and

integrated circuit solutions for power management in communications, consumer, computing, servers and industrial applications.

21.     On March 26, 2021, Magnachip issued a press release announcing the Proposed Transaction, which states, in relevant part:

> SEOUL, South Korea, March 26, 2021 -- Magnachip Semiconductor Corporation ("Magnachip" or the "Company") (NYSE: MX), the South Korean leader in display and power solutions, today announced that it has entered into a definitive agreement (the "Agreement") with South Dearborn Limited, a company incorporated in the Cayman Islands, and Michigan Merger Sub, Inc., a Delaware corporation, which are investment vehicles established by Wise Road Capital LTD and certain of its limited partners ("Wise Road").
>
> Under the terms of the Agreement, Magnachip shareholders will receive $29.00 in cash for each share of Magnachip's common stock they currently hold, representing a premium of approximately 75% to Magnachip's 3-month volume-weighted average share price and approximately a 54% premium to the unaffected closing stock price on March 2, 2021, the last trading day before media reports of third-party interest in acquiring Magnachip.  The all-cash transaction has an equity value of approximately $1.4 billion.   The transaction is fully backed by equity commitments and not contingent on any financing conditions.
>
> Following the closing of the transaction, Magnachip's management team and employees are expected to continue in their roles, and the Company will remain based in Cheongju, Seoul and Gumi, South Korea.  The transaction is expected to be seamless for customers and employees across Magnachip's businesses.
>
> Magnachip's Chief Executive Officer, YJ Kim, said: "This transaction is in the best interests of all of our stakeholders, including shareholders, customers and employees.  It will provide an excellent opportunity to accelerate our MX 3.0 growth strategy.  Given their deep industry expertise, Wise Road Capital is an ideal partner for Magnachip, and we look forward to working with them as we chart the next phase for our company.  We remain grateful to our customers for their trust and to our fellow employees for their unwavering commitment to delivering industry-leading products to customers worldwide."
>
> Wise Road intends to work together with Magnachip's management team to pursue the next step in the Company's growth strategy and transform the Company into a true industry leader in the global display and power markets.  Through its additional investment and global network, Wise Road will help Magnachip's growth internationally.  Wise Road remains absolutely committed to providing world-class products and services to the Company's customers, while creating a stable environment for the company's employees to grow and thrive.

The Board of Directors of Magnachip has unanimously approved the Agreement and recommends that Magnachip shareholders vote in favor of the transaction. Details of the transaction and the Agreement are included with the Company's current report on Form 8-K, which will be filed with the United States Securities and Exchange Commission in due course.

The transaction is expected to close during the second half of 2021, subject to customary closing conditions, including the receipt of shareholder and regulatory approvals.

**The Proxy Misleads Magnachip Stockholders by Omitting Material Information**

22.     On May 7, 2021, Magnachip filed the materially misleading and incomplete Proxy with the SEC.  Designed to convince Magnachip's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning: (i) the Company's financial projections and the financial analyses performed by the Board's financial advisor, J.P. Morgan; and (ii) potential conflicts of interest faced by J.P. Morgan and Company insiders.

***Material Omissions Concerning the Company's Financial Projections and J.P. Morgan's Financial Analyses***

23.     The Proxy omits material information regarding the Company's financial projections.

24.     For example, with respect to Magnachip's projections, the Proxy fails to disclose all projection line items underlying the Company's unlevered free cash flow.

25.     The Proxy also omits material information regarding J.P. Morgan's financial analyses.

26.     The Proxy describes J.P. Morgan's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.

Without this information, as described below, Magnachip's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

27.     With respect to J.P. Morgan's *Selected Transaction Multiples Analysis*, the Proxy fails to disclose the multiples and financial metrics for each of the comparable transactions analyzed.

28.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the terminal values of Magnachip; (ii) the individual inputs and the assumptions underlying the range of discount rates of 9.50% to 11.50%; (iii) the Company's debt and cash; and (iv) the Company's fully diluted outstanding shares.

29.     With respect to J.P. Morgan's *Analyst Price Targets for the Company* analysis, the Proxy fails to disclose the individual price targets for Magnachip and the sources thereof.

30.     Without such undisclosed information, Magnachip stockholders cannot evaluate for themselves whether the financial analyses performed by J.P. Morgan were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which J.P. Morgan's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

31.     The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Forecasts" and "Fairness Opinion of J.P. Morgan."

*Material Omissions Concerning J.P. Morgan's and Company Insiders' Potential Conflicts of Interest*

32.     The Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by J.P. Morgan.

33.     The Registration Statement states:

> During the two years preceding the date of J.P. Morgan's opinion, J.P. Morgan and its affiliates have had, and continue to have, commercial or investment banking relationships with the Company for which J.P. Morgan and such affiliates have received, or will receive, customary compensation. Such services during such period have included acting as financial advisor on the Company's divestiture which closed in September 2020. . . .   During the two-year period preceding delivery of its opinion ending on February 28, 2021, the aggregate fees recognized by J.P. Morgan from the Company were approximately $11 million.

Proxy at 66.  Yet, the Proxy fails to disclose the details of any services J.P. Morgan provided to Wise Road or its affiliates in the two years preceding the date of its fairness opinion, and the related compensation J.P. Morgan received, or expects to receive.

34.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

35.     The Proxy fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

36.     For example, according to the March 26, 2021 press release announcing the Proposed Transaction, "[f]ollowing the closing of the transaction, Magnachip's management team and employees are expected to continue in their roles[.]"   The Proxy fails, however, to disclose the details of any employment and retention-related discussions and negotiations that occurred between Wise Road and Magnachip's executive officers, including who participated in all such communications, when they occurred and their content.  The Proxy further fails to disclose whether

any of Wise Road's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

37.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Magnachip's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38.     The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Fairness Opinion of J.P. Morgan," "Background of the Merger" and "Interests of Our Directors and Executive Officers in the Merger."

39.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

40.     Plaintiff repeats all previous allegations as if set forth in full.

41.     During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

42.     By virtue of their positions within the Company, the defendants were aware of this

information and of their duty to disclose this information in the Proxy.  The Proxy was prepared,

reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts,

including material information about the Company's projections, J.P. Morgan's financial analyses,

and potential conflicts of interest faced by J.P. Morgan and Company insiders.

43.     The omissions and false and misleading statements in the Proxy are material in that

a reasonable stockholder would consider them important in deciding how to vote on the Proposed

Transaction.

44.     By reason of the foregoing, the defendants have violated Section 14(a) of the

Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

45.     Because of the false and misleading statements in the Proxy, Plaintiff is threatened

with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is

appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

46.     Plaintiff repeats all previous allegations as if set forth in full.

47.     The Individual Defendants acted as controlling persons of Magnachip within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers and/or directors of Magnachip, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Proxy filed with the

SEC, they had the power to influence and control and did influence and control, directly or

indirectly, the decision-making of the Company, including the content and dissemination of the

various statements which Plaintiff contends are false and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

50.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Magnachip stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Magnachip, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  June 4, 2021

**WEISSLAW LLP**

By _____

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

**OF COUNSEL**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*